IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| DEBRA F. FREEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:09-CV-011 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits. For the reasons that follow, defendant's motion for summary judgment [doc. 11] will be granted, and plaintiff's motion for summary judgment [doc. 8] will be denied.

I.

*Procedural History*

Plaintiff was born in 1962. [Tr. 82]. She applied for benefits in July 2007, alleging disability as of February 2, 2005, on the basis of anxiety, fibromyalgia, depression, arthritis, back pain, neck pain, and headaches. [Tr. 82, 91]. Her application was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in November 2007.

The following month, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from: "musculoskeletal impairments related to her chronic low back pain and neck pain; anxiety; and depression," which are "severe" impairments but not equal to any impairment listed by the Commissioner. [Tr. 13, 17]. The ALJ found plaintiff to have the residual functional capacity ("RFC") to perform a range of medium exertion. [Tr. 18]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains able to perform a significant number of medium jobs existing in the regional and national economies. [Tr. 20-21].

Plaintiff then sought review by the Commissioner's Appeals Council. Review was denied on December 11, 2008. [Tr. 1]. The ALJ's ruling thus became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g)*; Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of

2

evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

III.

*Analysis*

The ALJ found that plaintiff retains the RFC "to perform simple, routine repetitive, low-stress jobs at the medium level of exertion that do not require contact with the public and that do not require greater than occasional contact with co-workers." [Tr. 18]. On appeal, plaintiff argues that she should have been found disabled on the basis of a January 2007 Mental RFC Assessment and/or a May 2007 lumbar MRI. The court will address these points in turn, and any remaining issue not specifically addressed by plaintiff has been waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

4

A. <u>Mental Impairment</u>

The administrative record contains three pieces of objective opinion evidence regarding plaintiff's mental capabilities. Psychological examiner Rebekah Ramey performed an in-person mental status evaluation in July 2006. Ms. Ramey predicted only that plaintiff would be mildly to moderately limited in adapting to changes in the workplace, along with a moderate limitation in retaining new information. [Tr. 302].

Nonexamining source Karen Lawrence, Ph.D., then completed a Mental RFC Assessment form in August 2006. Dr. Lawrence predicted moderate limitation in carrying out detailed instructions, responding appropriately to changes in the work setting, working at a consistent pace without interruption, and interacting with the public. [Tr. 325-26]. In January 2007, nonexamining Dr. Marvin Blase also completed a Mental RFC Assessment form. Dr. Blase's opinion was slightly more restrictive than Dr. Lawrence's, as he predicted moderate limitation in nine mental capacities. [Tr. 368-69]. Dr. Blase's opinion was based in part on his assessment of a cognitive disorder. [Tr. 355].

As noted, the ALJ restricted plaintiff to "simple, routine repetitive, low-stress jobs . . . that do not require contact with the public and that do not require greater than occasional contact with co-workers." The ALJ's findings are essentially a synthesis of the opinions of Ms. Ramey and Dr. Lawrence, who he "generally" credited. [Tr. 19].

Plaintiff instead argues that it was error not to accept the assessment of Dr. Blase. Vocational expert Donna Bardsley testified at the administrative hearing that if Dr.

5

Blase's opinion were fully credited, all employment would be precluded. [Tr. 51].

Dr. Blase's assessment was rejected because it was based in part on a cognitive disorder, which the ALJ deemed "not documented in the record." [Tr. 19]. That rationale is valid. Ms. Ramey's evaluation indicated no cognitive disfunction [Tr. 300], and treating physician Vance Shaw and treating nurse practitioner William Clever expressly noted "[n]o cognitive impairment" on at least seven different occasions. [Tr. 414, 416, 418, 420, 422, 424, 426].

Moreover, the Commissioner's regulations provide that the opinion of an examining source should generally be assigned more weight than that of a nonexamining source. *See* 20 C.F.R. §§ 404.1527(d)(1). Plaintiff offers no argument why that fundamental regulation is not applicable in her case. It was appropriate for the ALJ to credit Ms. Ramey, who personally examined plaintiff, over Dr. Blase, who merely reviewed the file. The court finds no error.

### B. Physical Impairment

The ALJ restricted plaintiff to medium exertion in reliance on the July 2006 Physical RFC Assessment of nonexamining source "B. Haywood." [Tr. 19, 304-07]. Plaintiff argues that "B. Haywood"'s assessment was not entitled to controlling weight because the administrative record does not indicate that "B. Haywood" is a medical doctor.

To the extent that the ALJ erred in assigning controlling weight to the opinion of a source whose occupation is unknown, the court deems any such error harmless in the

6

present case. For the same reason that he was entitled to credit the opinion of Ms. Ramey, the ALJ could have adopted the opinion of consulting physical examiner Dr. Karl Konrad.

Dr. Konrad performed a consultative examination in July 2006. Plaintiff's neck showed full range of motion, as did her back. [Tr. 297]. The back exhibited no tenderness or spasm, and plaintiff walked without assistance or limp. [Tr. 297]. Dr. Konrad predicted "no impairment-related physical limitations." [Tr. 298].

In relying on the more restrictive "B. Haywood" assessment, the ALJ in fact gave plaintiff the benefit of the doubt in limiting her to medium work despite the hands-on examiner's opinion that she is not limited at all. The court further notes the vocational expert's testimony that jobs would exist to accommodate plaintiff's RFC even if she were restricted to the light or sedentary levels of exertion. [Tr. 21, 49-50].

Plaintiff also argues that it was error not to obtain opinion evidence regarding a May 2007 lumbar MRI which showed: hypertrophy most prominent at L4-5 and L5-S1; borderline central spinal stenosis; and nerve root encroachment particularly at L3-4. [Tr. 397]. Despite the May 2007 MRI, the ALJ wrote that "the medical record shows only minimal treatment and minimal objective findings." [Tr. 20]. That statement is generally true. March 2006 lumbar x-rays were negative for any significant degenerative changes [Tr. 336], and October 2006 lumbar x-rays were unremarkable. [Tr. 405]. October 2006 cervical x-rays produced only mild findings [Tr. 404], and April 2007 lumbar x-rays showed no acute abnormalities. [Tr. 401].

There is no opinion evidence as to the effect of the conditions noted in the May 2007 MRI. In cases where a claimant is relying on subjective allegations of disabling pain, there must be evidence of an underlying medical condition and either (1) the objective medical evidence must confirm the severity of the pain arising from that condition, or (2) the objectively determined condition must be of a severity which could reasonably be expected to give rise to the allegedly disabling pain. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). As noted by the ALJ, most of the imaging evidence has been unremarkable. Treating sources Shaw and Clever have noted tenderness in the lower back [Tr. 412, 414], but mere tenderness does not satisfy the standard set forth in *Duncan*.

In conducting its substantial evidence review of the ALJ's conclusion regarding plaintiff's claims of disabling back pain, this court has ultimately relied on a comparison of plaintiff's subjective complaints and the file of treating sources Shaw and Clever. To the Commissioner, plaintiff testified that her back pain is "constant" and feels like "someone is hitting me with a bat, ball bat." [Tr. 40]. She has also informed the Commissioner that her purportedly disabling daily neck pain "feels like my neck is trying to be shoved up into my skull," or "like my spine is being shoved through my neck . . . all the time." [Tr. 91, 128].

Conversely, to Dr. Shaw and Mr. Clever, plaintiff rated her lower back pain as five out of ten in November 2006 but was noted to be "overall doing well." [Tr. 412]. In December 2006, Dr. Shaw recorded plaintiff's pain complaint as "5/10 *intermittent*" and plaintiff was again described as "overall doing well." [Tr. 414] (emphasis added). By

8

January 2007, plaintiff rated her "intermittent" back pain as only three out of ten. [Tr. 416]. Dr. Shaw again recorded plaintiff's self-report of only "3/10 . . . intermittent" back pain in March and May of 2007. [Tr. 420, 424]. The court deems it highly relevant that Dr. Shaw's May 2007 notation was made within a week of the MRI which plaintiff now relies upon to support her claim of disabling pain.

In light of the above, the ALJ did not err in finding plaintiff's subjective complaints "not completely credible." [Tr. 19]. Her claims to the Commissioner of "constant" disabling "baseball bat" and "skull shoving" pain cannot be taken seriously when compared to her minimal complaints to the treating sources.[1] Plaintiff's physical complaints were nonetheless taken into account by the ALJ in restricting her to a range of medium exertion. It is the *severity* of her condition that is at issue, and substantial evidence supports the ALJ's conclusion that the present complaints are overstated.

---

[1] Similarly, plaintiff's self-reports of fibromyalgia are repeated throughout the administrative record. [Tr. 261, 268, 299]. However, Dr. Konrad's fibromyalgia pressure point testing was negative. [Tr. 297].

9

## IV.

*Conclusion*

For the reasons provided herein, the final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge